Case number 16-7019, Lakeisha Jordan, individually and on behalf of YF, a minor, as her next friend, and YF, a minor, appellants, versus District of Columbia et al. Mr. Nace for the appellants, Ms. Pittman for the affiliate. Good morning. May it please the Court. Your Honors, Christopher Nace on behalf of the appellants in this case, Ms. Lakeisha Jordan, the mother and her minor daughter. Can I just make an opening statement here? No one asked to seal the courtroom, so it's not sealed. It does seem that there are some descriptions of the minor's medical circumstances which don't need to be discussed, and I'd like both sides to take appropriate discretion here and, of course, alert us if the bench is not doing so. Thank you, Your Honor. And, Your Honor, I've asked the Court's permission, three minutes for rebuttal. Your Honors, the District Court's ruling in this case effectively holds that a state actor can medicate a child without consent from either the child or the child's parents, even when parental rights have not been terminated. In this case, our argument is that the right to treat by the government actors here did not exist under the Constitution. It's not our argument, it's not our case that the method of treatment or the means of treatment rose to the level of a 1983 violation, but rather that the government and its state actor, the private hospital here, never had the authority to treat, in the first place. On November 2nd, 2006, when the minor was admitted as an inpatient to the private hospital, she was then discharged on April 9th, 2007, so some months during an admission. She returned 10 days later and stayed another 30 days at the hospital. There's no dispute that during that time period, the mother's parental rights had been terminated. They were not terminated. They stayed intact. Everybody agrees to that. But during that time period, the District Government, through the agents and the health care providers at the private hospital, PIW, and operating under the color of state law, prescribed and administered a number of anti-psychotic or atypical psychotic medications to a then seven-year-old. They never received consent to do this. They never sought permission from the court to do it. They never asked the mother if they could do it. And they even testified during discovery in this matter, at least the hospital testified, that they believed they had to get consent from the parent. But they asked the government, the District Government. The District Government, on a number of occasions, gave consent. We have 25 or so instances that we claim are at issue, and there's about 11 consent forms from the District Government that have been produced in the case. And the other times, they say, well, we don't know where they are. Neither the District of Columbia government nor a private hospital operating under the state law can simply take a child into custody and administer anti-psychotic medications when parental rights have not been terminated. And to take a child and begin administering those kind of medications, to take anybody and begin administering those medications, violates the Fifth Amendment due process rights. Now, importantly, that would be the case even if the medication was prescribed appropriately. Of course, in this case, we do have other claims beyond the Section 1983 claim. We have a medical malpractice negligence claim that is pending, as well as a medical failure to obtain informed consent case. Those are not at issue here. The District Court did not rule on those claims. Instead, it remanded them to Superior Court because of the state law nature of them. But here, under this circumstance, where there is no authority for the government to consent to this medication on behalf of the child, even if everything was done, even if the experts all agreed that the standard of care had been followed to a T, it would still be a violation of the due process rights of this child because there exists a liberty interest in being free from these types of medications. Again, our argument is not that the negligence or the medical malpractice rose to such a height that creates a due process violation 1983 claim. That is not our argument in this case. That would be, as at least one court has said, I think, putting the font of 1983 on top of tort law, state tort law. That is not what our allegations are here. The District Court correctly stated in its opinion that the Supreme Court has emphasized time and again that the touchstone of due process is protection of the individual against arbitrary action of government. And that was cited in County of Sacramento v. Lewis 523 U.S. 833. Just to look at it from the other perspective, the child's taken, right, by the district. And then the medical professionals say the child is at risk unless, and I'm using that colloquially, but at risk or should receive certain kinds of treatment. And it is the evidence in the record suggests that was within the bounds of reasonable medical judgment. I know you're going to contest that separately, but what's wrong with all that in terms of once they have taken custody of a child to make sure that the child, in other words, if they hadn't given the treatment, they hadn't given the treatment, I could see you coming in and saying, wait a second. They should have given some treatment to this child rather than allowing, you know, imagine the scenario. Certainly. And I think the answer to that, Your Honor, is the amount of time that has passed during this period. I would agree with Your Honor if we were talking about the first day of an admission, maybe the second day, the third day, there is a point in time where even we would agree that the needs of the child, the immediate needs of the child require some action. And quite honestly, we have abandoned, I guess is the right word, our allegations that the seclusion claim of a part of our case. The reason we think that that's not an appropriate claim is because in those instances, at least what we learned in discovery, those were oftentimes reactions to the child putting herself in danger, putting others in danger, including staff and other children at the facility. But when we're talking about the decision to medicate over a period of six or seven months here, there is a time period where the deliberate indifference, the indifference of the hospital or the government to go to court and say, we need approval to be able to medicate or to bring the mother in and say, we would like your consent to medicate appropriately under certain circumstances. This is a similar to the Butera case where the court said that because of the time period to deliberate and to consider the issue, it changes the analysis. In describing the constitutional claim, as you just articulated, you use the word deliberate indifference, and I just want to make sure I understand the nature of your claim. So your claim is that the district was deliberately indifferent to the need to obtain consent. That's right. And so it didn't have the requisite policy or practice in place to assure that consent was gotten from what you think was the right place, which is from the parent. That's correct. And in fact, when we inquired as far as what the policy or practice was at the time, nobody knew. They indicated that, well, the policy was changed sometime between 2007 and 2009. Well, that's after the fact. So up until that point, nobody's been able to articulate what that policy or procedure was. So given the time period, not just in being able to come up with a policy or procedure, but in this particular instance where the child was admitted for six months and they had the opportunity to say, we need to go to the court because we are prescribing and administering antipsychotic medications to this child. There was never an attempt to do that. There was never an attempt to get court approval. There was nobody looking out for this child's Fifth Amendment due process rights. Well, the agency had custody, right? The Child and Family Services Agency. The agency had custody, but parental rights had not been terminated at that point, and they never were. Right, but they had custody. Is it reasonable to go when a parent's lost a child, custody of a child for neglect, to count on the parent to make the decisions for the medical treatment? Perhaps not, but shouldn't a court determine that as opposed to the agency itself without taking any steps to do that? Maybe, but does it rise to the level of deliberate indifference? Again, I could see a claim that actually if you're talking about a child's rights, if a parent who has lost custody because of neglect is given the absolute veto over a child's medical care, even though they've lost custody because of neglect, you're going to trust that person to make the decisions for the child? And that's certainly a valid point. I think that's the point that was raised in the Parham case, quite honestly, where the Supreme Court was testing that sort of tension between the child's rights and the parent's rights and ultimately was looking at the policies and procedures that were in place at the state to say, this is where the state is within its right to go ahead and act on behalf of the child. At the time of the conduct in this case, the city's understanding, the D.C. case hadn't come out yet, so the city's understanding was that the consent could be obtained from the agency. And later on after the decision, as a matter of D.C. law, consent, it turns out, should have been gotten from the parent. But as a matter of the practicalities of what was going on, the consent, at least in some situations, was sought by the hospital from the agency and obtained. In some situations it was. Not in all, though. Certainly not in all. And again, we are at this point in the case, of course, at summary judgment stage, and are these questions that a jury should be deciding as opposed to the court as a matter of law? We're entitled to, I believe, to the inference that those are facts that a jury could determine that didn't shock the conscience at that point. Can I ask one about this shock the conscience idea? So in your brief you say, first you have to find out if there's liberty interest. Then you have to decide, in order to recover damages, whether the deprivation of that interest shocks the conscience, right? The liberty interest is the liberty to not have the administration of psychotropic drugs in the absence of consent. That's your position about that? Yes, correct. And the violation is? The violation is the administration of those medications without obtaining consent. So they're the same? That is, the deprivation of the liberty interest and the shocking of the conscience, in this case, are identical? Well, I think that's right. I mean, I think that the Supreme Court has spoken to the fact that there is a liberty interest in being free from these neuroleptic or whatever categories. Well, yes, yes, but normally, as you correctly point out, I think the doctrine, first you identify the liberty interest, decide whether that's been violated, and then you move on to the question of whether that constitutes violation of basically substantive due process, right? Yes. So is there no line in this case between those two things? Well, I think the line, Your Honor, is the fact that over a period of six months, nobody was attempting to respect the liberty interest. In other words, we have children being taken into custody. So is respect for the liberty interest the violation, or is the actually going ahead without consent the violation? Well, I think that you could certainly, as we discussed with Judge Kavanaugh, you could certainly find a scenario where going forward with the administration of the medications, although there is a liberty interest, because of the timing, because of the needs of the child, it wouldn't necessarily amount to a violation of it. This is the balancing that has to happen that is discussed a little bit in Youngberg. Yes, and likewise, defendants can be involuntarily subject to psychotropic drugs if the state has an overriding interest, which it displays. It's not just enough that the person's consent was overborne. You also have to show, or it has to be shown, that the state didn't have a countervailing interest, right? That's right. So how do we get to that second step in this case? What evidence do you have that not only was the liberty interest violated, but that it was done in circumstances like Judge Kavanaugh is asking where there wasn't enough, there was plenty of time, or any of the other things? Well, I think simply the fact the time period of the admission in general of being over a period of six months, we have a state actor over six months continuing to medicate a minor in their custody. When they know where the mother is, there is evidence in the record that the mother visited her child at the hospital and was there for certain meetings, but never did she sign off. At what point is the government just overreaching by saying this is in our, we have the authority to do that, to administer records without any consideration for inquiring of the parent who's here, or taking the step of going to court and saying we know parental rights haven't been terminated, but we've seen this person and this is the reason we want the authority to be able to administer these medications. Nobody ever took those steps over a period of time. I mean, that I think is the question where you get, this becomes a jury question of does that shock the conscience? I mean, that's, again, the Butera case, which is a little different factually, but the holding in it was that when you have this time period, it can go on to a point where you say this does rise to a due process violation. And again, just to contrast it with the seclusion issue in this case, I can see that in those cases those are snap decisions where maybe you don't have the time to respond, to seek consent or seek court order. But when the medication, and again, recall too, the medication program was changed continually. That's more the subject of our medical malpractice claim. But there was change after change after change after change. This was not one time where a medication was elected to be given, was shown to be working, and so it was continued. Your view would be that every time it's changed, consent would be required. Or maybe every time it's administered, which. I certainly think that, well, I think that the administration is the issue. I don't know that if it's prescribed and not given, I don't think that that. But every time it's administered. I think there is a point in time during the stay during which, in fact, perhaps, and again, I think this is a jury question, but I think perhaps you draw the line where the initial admission of, I think it's a 21-day order, expires. We still have five months of medicating this child. The government just medicating, medicating, medicating, and never going to the mother or the courts and saying, we need approval to do this. That's a custom, a policy of deliberate indifference towards the Constitution by the district government. Would you say that for the situations in which consent was sought and obtained from the agency? As I understand your theory, it's equally a constitutional violation when consent was sought and obtained from the agency. I think that at that point, the hospital has probably, although the hospital testified that they thought they had to get it from the mother, but they went to the agency instead. If people are saying, we thought we had to go to the parent, we knew parental rights weren't terminated, why did nobody go and ask for permission to do this? And it's because there was just an ignoring of constitutional rights. And that's why a jury should hear that. If you know that the mother's parental rights have not been terminated, if you believe that you should be seeking consent from the parent to give these medications, and you don't do it, and on a few occasions you go to the government and say, well, we'd like to make this change, will you consent? And the government says, sure, we'll consent. Isn't that the definition of deliberate indifference towards one's constitutional rights? This is overreaching by the government to medicate a child and never take the appropriate steps to have any constitutional authority to do it. Thank you, Your Honor. Good morning, Your Honor. May it please the Court, my name is Lucy Pittman. I'm here on behalf of the District of Columbia. The district court's decision here should be affirmed because, quite frankly, the government's actions here do not shock the conscience. What's undisputed is that the Child and Family Services Agency took custody over YF when she was seven years old due to parental neglect, and that they had a court order in place providing them with the custody, that YF had serious mental illnesses, and that she needed acute psychiatric care. The court order gave custody to the agency? Yes. Did it describe what custody entailed? What rights are entailed in custody? Certainly, and I think to some extent the G.K. case, which was decided in 2010, and the D.C. Court of Appeals goes into that detail a little bit more. At the time, it was thought that custody did include the right to consent to medications for children and foster care. That was a pretty universal thought in 2006 that the agency had, PIW had that thought, and, in fact, you'll see in the G.K. opinion, the Superior Court judge still thought it in 2009 when that case was decided, that, in fact, it was the agency's, within the agency's responsibility as the custodian to provide that consent. Did the court order say anything? No, it wouldn't have been that explicit. But to go on, so it was undisputed. Can I just? I'm sorry. Can you just refresh my recollection or maybe give me a new recollection with respect to G.K.? Did the court explain why it was apparent? Is there some statute in District of Columbia, or is it District of Columbia common law? Sure. It's statutory law that they were interpreting, and they admitted it at the beginning of the opinion. It was a first impression case. And what it was was there's legal custody, the definition of legal custody, the definition of residual parental rights, and the definition of guardianship of the person of a minor, I believe, is the third definition. And it's the guardianship of the person of the minor that is the entity that can provide consent. It was not entirely clear at that time, was that a residual parental right or was that something that transferred with legal custody? In fact, in G.K., at that point in time, CFSA actually took the position that it did not have the legal authority. Why is that? That seems curious because if everybody had a common understanding that the consent comes from the CFSA, then why is the CFSA taking the position in G.K. that it doesn't have that authority? It's not clear in the record here or even in the record of G.K. at what point CFSA determined that it did not have the authority and that it wanted to seek parental consent. The corporate designee testified that it was at some point in between 2007 and 2009. She couldn't pinpoint it further. And I don't believe there was a lot of questions about why there was that policy change. But in any event, by the time G.K. gets to court, that policy shift had been made. And so then you have the situation where you have the district affirmatively stating to the Court of Appeals it did not have that authority, whereas other parties in that case were stating, and in fact the Superior Court judge thought so, no, you do have that authority. And it wasn't a residual parental right. In any event, and it was fairly clear in 2006 when YF was at PIW that PIW and CFSA both thought that this was the right way to do consent. The record will show that it was the PIW social workers and nurses who were describing that when they have a minor in care, they seek consent from either the parent or the agency if in fact the child is in care with an agency, as was the case here. What do you say about the instances in which, even under the understanding that existed at that time, consent was not sought or obtained from CFSA? The record is not entirely clear here, and I don't know that the plaintiffs fully developed when there were instances where there wasn't consent. There were certainly a number of instances where there were consent. And so it's just not clear on this record if there was, say, on X date, a particular medication. Well, assuming that there were situations in which there wasn't consent, what's your... Again, relying on the testimony from the individuals at PIW, there are circumstances where even there you wouldn't need consent. For example, the child came in on an emergency application, an FD-12, so the medication that she was prescribed at that time, they could continue to provide to her without seeking consent from a parent or from the agency. And there would also be times where the as-needed, the PRN medication, would not need consent, and they would not need consent for dosage changes. I don't see anything in the record that indicates that PIW was incorrect legally as to those things, nor do I see sort of a flesh-out in the record as to whether or not there were instances where consent was not obtained from CFSA that didn't fit one of those exceptions. I think in the end, even if there was instances of medicating where there wasn't consent, I don't know that that fits the shock-the-conscience test that we have here. I think Judge Kavanaugh had it right. I mean, this is almost the opposite of the Harvey case or the Smith case where there was deliberate indifference because the agency that had custody of the child did not act. Here, we have the opposite of that here, where we have the agency acting consistent with the medical recommendations, consistent with the professional judgment. And under Youngsburg, if you're going to use the Youngsburg standard, you have to-there's a presumption of validity in the professional judgment when these medications are prescribed by qualified doctors. We also have a situation here where I think factually we need to be careful about saying that no one really knew what the agency or PIW was doing. I think it's important to just note very quickly, Ms. Jordan was fully aware of the treatment that was being provided. Maybe fully aware isn't the right word, but she was certainly aware of the treatment that was being provided at PIW. She testified that she attended monthly treatment team meetings. She also obtained the court records. And PIW was submitting records to the court that talked about the psychotropic drugs. And so this is not-this is just not a shocking the conscience sort of case. Certainly no one was objecting at the time that it was happening, and it was consistent with the doctor's recommendations. I don't want to take up more time. If the panel doesn't have more questions, I know that we also briefed Monell. I have one question for you, which is the district takes a position that the child doesn't have any independent constitutional right to begin with. And what happens in a situation in which parental rights have been terminated, too, and so the child is in the full custody of the government entity? Would the district still say that the child has no independence? I think typically someone would be appointed to exercise that right for the child. And so I don't think we're saying that it's not possible for that right to not exist. But when we're talking about a 7-year-old who can't actually provide consent, it is a discussion of who can provide the consent for her. Thank you. Well, she left you 2 minutes and 22 seconds of her own time, which she has gifted to you. That was very, very much appreciated. Thank you. Just a couple of brief points. Number one, I would point out that a lot of the argument we just heard creates factual disputes. And we believe these are the types of factual disputes that do exist as far as who knew what the policy was, when was consent sought, does the failure to ask for consent rise to the level of shocking the conscience. These are factual issues as far as who knew what that should not be addressed on summary judgment. These are the questions that are jury questions. Can I ask, is what shocks the conscience a jury question? I think it is, Your Honor. I'm not saying it's wrong, but it sounds like a legal conclusion. Well, I think that even if you look at this Court's opinion in Butera, it talks about how there are different factual analyses that you can't put a pinpoint right on it. And I think when you have those, I think it becomes a jury question. I'm not aware of anything that says it's not a jury question. Or that it is. Or that it is. Correct. Correct, Your Honor. Just a couple other points. I want to be careful on Youngberg because I think that that is the error, part of the error that the district court made. Youngberg talks about whether professional judgment can rise to the level of civil rights violations. And in that case, the question was, were the medical professionals doing the right thing in their treatment plan? That is not our argument. And I think this is where our dispute with the trial court or the district court comes, is that that is not our argument. Our argument is not, as I said at the beginning, even if the health care providers provided perfect care, because they were not getting consent, they can still violate due process. So simply by saying, well, the medical professionals did their job, if you don't have consent, you can't just send it to the professionals. One fact question. On the government's point that the mother was present in these treatment meetings, is that disputed in the depositions? The government said that she was present at all the treatment meetings. I'm not sure if that's the case. I know she was present at some treatment meetings. Again, though, I think those, you're not necessarily dealing with a sophisticated appointed in the case. And so that raises the level of what happened. She would be the one who you're saying would have to consent. Yes. One way or the other. That's right. Notwithstanding her lack of sophistication, no one would be appointed for her. That's right. But the question is, if the obligation is on the health care provider as a constitutional matter to get consent, then the consent, the issue has to be explained and you have to educate her. I don't know that it's appropriate to just say, well, she was there and she didn't say anything. I think that's a factual question. And the last point I'll make, just with regard to the number of consents, there were some. When you talk about a PRN or an as needed medication, that's an order that's written at one point in time. Certainly that order can be consented to. Quite honestly, in conclusion, there are countless factual issues in this case that need to be resolved. But the district court's summary judgment order should be reversed because the district court failed to consider this issue of getting consent for the treatment and instead looked at the treatment in and of itself as the constitutional violation. And that is not the claim that was before the court. The claim is that the failure to get consent before you even get to treatment, that's the constitutional violation, not simply the manner of prescribing medications. Thank you, Your Honors. Thank you. We'll take the matter under submission.
judges: Garland, Kavanaugh, Srinivasan